UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| THOMAS R. GRAVEL, )<br>)<br>    Plaintiff )<br>)<br>    v. )<br>)<br>AARON SPENCE, )<br>ADVANCED DEVELOPMENT )<br>COMPANY LLC, and )<br>ADVANCED MANUFACTURING )<br>COMPANY LLC, )<br>)<br>    Defendants ) | Civil Action No. _____ |

## **VERIFIED COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff Thomas R. Gravel and states his verified complaint against Defendants Aaron Spence, Advanced Development Company LLC, and Advanced Manufacturing Company LLC, as follows.

### **Nature of the Action**

1.    This action emerges from a business relationship between Aaron Spence and Thomas Gravel. Gravel sold Spence substantially all of the assets of Gravel's business—which manufactured cutting-edge steel trip snow pushers for use with heavy equipment—and went to work for Spence to teach him the manufacturing process. Spence, in breach of their written contract, never paid Gravel a single cent for Gravel's intellectual property, offering bad-faith justifications for his refusal to pay that revealed that Spence never intended to perform. Spence is using Gravel's intellectual property to this day, manufacturing and selling snow pushers from Spence's Hermon facility under the trade name Subzero Snow Pushers. Spence also failed to pay

1

Gravel all wages earned, hiding his wage theft until its discovery by Gravel. By this action, Gravel seeks to recover from Spence and his businesses for their failure to pay wages, breaches of contract, fraud, and other wrongdoing.

## Parties

2. Plaintiff Thomas Gravel is an individual residing in Barre, Massachusetts.

3. Defendant Aaron Spence is an individual residing in Dedham, Maine.

4. Defendant Advanced Development Company LLC ("Advanced Development") is a limited liability company organized under the laws of Maine with principal place of business in Hermon, Maine.

5. Upon information and belief, Aaron Spence is the sole member of Advanced Development.

6. Defendant Advanced Manufacturing Company LLC ("Advanced Manufacturing") is a limited liability company organized under the laws of Maine with principal place of business in Hermon, Maine.

7. Upon information and belief, Aaron Spence is the sole member of Advanced Manufacturing.

## Jurisdiction and Venue

8. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is diversity of citizenship between Gravel on the one hand and Spence, Advanced Development, and Advanced Manufacturing on the other hand.

9. The Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Gravel brings a claim under the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et*

*seq*. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this judicial district. Furthermore, Spence resides in this judicial district, and the principal places of business of Advanced Development and Advanced Manufacturing are in this judicial district, and Advanced Development and Advanced Manufacturing are organized under the laws of Maine.

**Facts Common to All Counts**

11. Plaintiff Thomas Gravel is the founder and was, at all relevant times, the sole owner of Hydro Cutter Inc. ("Hydro Cutter"), a business founded in 2001 for the design and manufacture of industrial equipment that cut materials using high-pressure jets of water.

12. Through Hydro Cutter, Gravel designed a snow pusher for use with heavy equipment. Gravel's snow pusher design includes a steel trip edge, which scrapes up hard-packed snow and ice, allowing reduced salt use. Gravel's snow pusher design also includes a trapezoidal frame, which increases the strength and durability of the snow pusher.

13. Gravel retained counsel to pursue a patent application and, through that counsel, filed a provisional patent application for the trip edge component of the snow pusher with the U.S. Patent and Trademark Office in 2018.

14. Through Hydro Cutter, Gravel manufactured snow pushers from a facility in Massachusetts and sold them directly and through a set of distributors located in New York and New England.

15. One of the distributors through which Hydro Cutter sold its snow pushers was Advanced Development.

16. In 2022, Gravel began to explore selling Hydro Cutter and its various assets.

17. In 2022, Gravel entered into a set of agreements with Aaron Spence under which Spence bought the assets of Hydro Cutter and hired Gravel to teach Spence how to manufacture snow pushers at Advanced Manufacturing's facility in Hermon.

18. In May 2022, Spence and Gravel (on behalf of Hydro Cutter) executed an Equipment Bill of Sale under which Spence purchased a large quantity of equipment of Hydro Cutter in exchange for $80,000. A true and correct copy of this contract is attached to this Complaint as **Exhibit A** (the "Equipment Contract").

19. Spence and Gravel each performed under the Equipment Contract. Spence paid $80,000 and personally coordinated picking up and shipping the equipment from Hydro Cutter's facility in Massachusetts in late August 2022.

### *Spence breaches the contract for the sale of Gravel's intellectual property*

20. On or around August 15, 2022, Spence and Gravel entered into a written contract for the purchase and sale of Gravel's intellectual property related to the snow pushers. A true and correct copy of this contract is attached to this Complaint as **Exhibit B** (the "Intellectual Property Contract").

21. Under the Intellectual Property Contract, Spence agreed to pay $110,000 in four equal payments of $27,500 made every six months, and Gravel agreed to provide all patent information and computer-aided design ("CAD") files relating to snow pushers.

22. Gravel performed under the Intellectual Property Contract, sending all patent information and CAD files relating to snow pushers in his possession to Spence via U.S. Postal Service, with signature confirmation.

23. Spence confirmed receipt of the package containing the intellectual property via text message to Gravel on August 24, 2022.

24. Spence is currently manufacturing and selling snow pushers using intellectual property acquired from Gravel.

25. Spence's snow pusher business, Subzero Snow Pushers, operates from Advanced Manufacturing's facility at 8 Liberty Drive in Hermon.

26. According to its website, https://www.subzerosnowpushers.com/, Subzero Snow Pushers is "formerly Hydro-Cutter, [and] is now operating out of Maine with a new owner but still offering the same trustworthy durability."

27. However, Spence never performed under the Intellectual Property Contract, and has never paid any funds to Gravel, as he was contractually obligated to do.

28. On February 15, 2023, when Spence was obligated to make the first payment to Gravel under the Intellectual Property Contract, he refused to do so, instead sending Gravel the email attached to this Complaint as **Exhibit C**.

29. In his February 15, 2023 email, Spence falsely claimed that he did not have to pay Gravel under the Intellectual Property Contract because Gravel had failed to fully perform under the Equipment Contract.

30. Spence's assertions that Gravel had breached the Equipment Contract were not only false, but also made in bad faith. Spence personally arranged to pick up the equipment that Gravel sold under the Equipment Contract. That pickup was made in August 2022.

31. At no time prior to sending his February 15, 2023 email did Spence mention any problem with Gravel's performance under the Equipment Contract. In fact, Spence never mentioned any missing equipment to Gravel during the entire period that Gravel and Spence worked together, in the fall of 2022.

32. In any event, any purported breach by Gravel of the Equipment Contract would not justify Spence's failure to perform under the Intellectual Property Contract.

33. In his February 15, 2023 email, Spence also sought to unilaterally rewrite the terms of the Intellectual Property Contract, by demanding a five-year non-competition agreement as a condition for Spence to make the required payment to Gravel.

34. Spence's bad-faith justifications for his refusal to pay Gravel, as Spence was required to do under the Intellectual Property Contract, after Gravel had fully performed, indicate that Spence entered into the Intellectual Property Contract without intending to pay Gravel.

### *Spence's wage theft*

35. In summer 2022, Spence hired Gravel to become an at-will employee of Advanced Development at its Hermon, Maine facility and, through that employment, to teach Spence the snow pusher manufacturing process.

36. Spence and Gravel agreed that Gravel would receive an hourly wage of $26.00 per hour. Gravel began work for Spence, commencing employment through Advanced Development on September 24, 2022.

37. In connection with this employment, Gravel purchased a home in Carmel, Maine in July 2022.

38. Gravel was paid on a biweekly basis.

39. Spence failed to provide Gravel with the proper personal protective equipment ("PPE"), despite using epoxy paint in the Advanced Development workshop. Gravel was forced to leave work early several times as a result.

40. After receiving his first wages (via direct deposit) in early October 2022, Gravel suspected that his biweekly income was too low. Spence admitted that he was paying Gravel $25.00 per hour, not the $26.00 per hour that Gravel and Spence had negotiated. However, because Gravel and Spence did not have a written agreement about Gravel's wage, Gravel acquiesced to the $25.00 per hour rate.

41. Gravel's subsequent earnings also appeared too low. On November 14, 2022, Gravel confronted Spence and insisted that Spence provide his earnings statements. After initially refusing, Spence eventually provided Gravel's earnings statements through that date.

42. The earnings statements showed that, for the previous three earnings periods, Advanced Development had not paid Gravel for ten hours worked during each period.

43. Gravel called the Maine Department of Labor shortly after November 14, 2022 about Spence's wage theft.

44. On November 23, 2022, Gravel quit working for Advanced Development. He subsequently obtained his earnings statement for his last pay period.

45. For the October 16-29, 2022 time period, Gravel's earnings statement showed that he was paid for 69.5 hours, though his time cards reflect that he worked for 79.5 hours during that pay period.

46. For the October 30-November 12, 2022 time period, Gravel's earnings statement showed that he was paid for 69.0 hours, though his time cards reflect that he worked for 79.0 hours during that pay period.

47.     For the November 13-26, 2022 time period, Gravel's earnings statement showed that he was paid for 49.25 hours, though his time cards reflect that he worked for 59.75 hours during that pay period.

48.     In total, Advanced Development failed to pay Gravel for 30.5 hours that Gravel worked.

49.     On or around December 5, 2022, Gravel filed a Statement of Claim for Wages with the Maine Department of Labor's Bureau of Labor Standards. A true and correct copy of this Statement of Claim (including its attachments, Gravel's earning statements and photos taken by Gravel of his time cards) and subsequent correspondence with the Department of Labor, is attached to this Complaint as **Exhibit D**.[1]

### *Spence breaches the verbal contract for septic tank replacement*

50.     When Gravel purchased his home in Carmel in July 2022, its septic tank was failing.

51.     Gravel asked Spence if he could remove the failing septic tank and install a new septic tank. Spence agreed to do so, in exchange for Gravel delivering a load of steel from Massachusetts to Advanced Manufacturing's Hermon facility. Gravel agreed, and the two formed a verbal contract in August 2022.

52.     Under this verbal contract, Spence was to remove the existing, failing septic tank and install a new septic tank before the ground froze in fall 2022.

53.     Gravel performed under this verbal contract, delivering the steel to Spence's facility in Hermon in September 2022.

---

[1] The account numbers have been redacted from Gravel's earnings statements.

54. Spence subsequently consumed substantially all of the steel in the construction of snow pushers.

55. However, Spence completely failed to perform. He did not deliver or install a new septic tank at Gravel's Carmel home. Nor did Spence remove the existing, failing septic tank.

56. On July 25, 2023, Gravel, through counsel, delivered a letter via email and FedEx to Spence outlining the conduct above and demanding the funds owed. Spence declined to respond.

57. Upon information and belief, there is no liability insurance, bond, or other security available on the part of defendants to satisfy an eventual judgment.

### Count I: Breach of Contract (Intellectual Property Contract) (Against Spence)

58. Plaintiff realleges and incorporates by reference the foregoing allegations.

59. In August 2022, Gravel and Spence entered into an enforceable written contract for the sale of Gravel's patent information and CAD files in exchange for payment by Spence of $110,000, to be made in four equal payments over two years.

60. Gravel performed under the contract, but Spence breached the contract by refusing to make the first payment of $27,500 when due in February 2023, and indicating that he would not make any payments to Gravel.

61. As a result of Spence's unjustified breach, Gravel has suffered damages.

### Count II: Breach of Contract (Septic Tank Agreement) (Against Spence)

62. Plaintiff realleges and incorporates by reference the foregoing allegations.

63. In August 2022, Gravel and Spence entered into an enforceable verbal contract under which Gravel agreed to deliver a load of steel to Spence, and in exchange Spence would

remove the existing septic tank at Gravel's home in Carmel and install a new septic tank before the ground froze in fall 2022.

64. Gravel performed under the contract by delivering the load of steel, but Spence breached the contract by never performing any of the work.

65. As a result of Spence's breach, Gravel has suffered damages.

### Count III: Unjust Enrichment (Against Spence and Advanced Manufacturing)

66. Plaintiff realleges and incorporates by reference the foregoing allegations.

67. Gravel conferred benefits on Spence and on Advanced Manufacturing by providing his snow pusher CAD files and patent information, and a load of steel, to Spence for use by Advanced Manufacturing.

68. Spence and Advanced Manufacturing had appreciation or knowledge of the benefit conferred by Gravel, as Spence is manufacturing and selling snow pushers through Advanced Manufacturing that are represented to the public as, and are in fact, utilizing the intellectual property provided by Gravel.

69. It would be inequitable for Spence and Advanced Manufacturing to retain the benefit received from the snow pusher CAD files and patent information, and the load of steel, without payment of their value.

### Count IV: Fraudulent Misrepresentation

70. Plaintiff realleges and incorporates by reference the foregoing allegations.

71. When Spence and Gravel entered into the Intellectual Property Contract in August 2022, Spence intended not to perform under the contract.

72. Instead, Spence intended to receive and utilize Gravel's CAD files and patent information to manufacture and sell snow pushers, and intended not to pay Gravel for them.

73. By entering into the Intellectual Property Contract, under which Spence promised to pay Gravel, without actually intending to pay Gravel, Spence knowingly made a false representation to Gravel.

74. Spence's factual misrepresentation that he would pay Gravel was material, as Gravel entered into the Intellectual Property Contract for the purpose of receiving payment in exchange for providing his snow pusher CAD files and patent information.

75. Spence entered into the Intellectual Property Contract with intent to defraud Gravel, as demonstrated by Spence's bad-faith justifications for failing to pay Gravel, and by Spence's unilateral effort to rewrite the Intellectual Property Contract, stated by Spence in his February 15, 2023 email to Gravel.

76. Gravel reasonably relied on Spence's representation in the Intellectual Property Contract that he would pay Gravel, and accordingly Gravel performed under the contract, providing his snow pusher CAD files and patent information to Spence.

77. As a result of Gravel's reasonable reliance on Spence's fraudulent misrepresentation, Gravel has suffered damages, namely by not being paid any amount for the snow pusher CAD files and patent information that Gravel provided.

**Count V: Violation of Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.**
**(against Advanced Development)**

78. Plaintiff realleges and incorporates by reference the foregoing allegations.

79. Between September and November 2022, Advanced Development was Gravel's employer within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d).

80. Between September and November 2022, Gravel was an employee of Advanced Development within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

81. During the course of Gravel's employment, at no time was Gravel exempt from the scope of the FLSA.

82. Advanced Development failed to pay Gravel any compensation for 30.5 hours that Gravel worked between October 17, 2022 and November 23, 2022.

83. By paying Gravel no wages for time that he worked, Advanced Development violated the FLSA's provisions governing minimum wages, 29 U.S.C. § 206.

84. Advanced Development's failure to pay Gravel for all hours worked was knowing and willful.

85. Due to Advanced Development's FLSA violations, Gravel is entitled to recover compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs.

### Count VI: Violation of Maine Timely and Full Payment of Wages Law, 26 M.R.S. § 621-A *et seq*. (against Advanced Development)

86. Plaintiff realleges and incorporates by reference the foregoing allegations.

87. In October and November 2022, Gravel was an employee of Advanced Development under Chapter 7 of Title 26 of the Maine Revised Statutes.

88. In October and November 2022, Advanced Development was subject to the requirements of Maine's timely and full payment of wages law, 26 M.R.S. § 621-A *et seq*.

89. Advanced Development failed to pay Gravel all wages earned for the period between October 17, 2022 and November 23, 2022.

90. Advanced Development and Spence failed to remedy this violation even after Gravel made demand for payment on Spence, most recently on July 25, 2023.

91. More than eight days have passed since Gravel made this demand, and Advanced Development and Spence have still not paid Gravel his unpaid wages.

92. Due to Advanced Development's violation of Maine's timely and full payment of wages law, 26 M.R.S. § 621-A *et seq.*, Gravel is entitled to collect his unpaid wages, a reasonable rate of interest, costs of suit, reasonable attorneys' fees, and double the amount of unpaid wages as liquidated damages.

### Count VII: Punitive Damages (against Spence)

93. Plaintiff realleges and incorporates by reference the foregoing allegations.

94. Gravel suffered damages as a result of Spence's tortious conduct, described above.

95. When he entered into the Intellectual Property Contract without intending to perform; utilized the snow pusher CAD files and patent information provided by Gravel to manufacture and sell snow pushers without paying Gravel any amount for this information; failed to pay Gravel all wages earned; and engaged in other malicious conduct, Spence was either motivated by ill will toward Gravel, or Spence's deliberate conduct was so outrageous that malice toward Gravel may be implied.

96. Because Spence was either motivated by ill will toward Gravel, or Spence's deliberate conduct was so outrageous that malice toward Gravel may be implied, Gravel should be awarded punitive damages against Spence.

### Jury Demand

97. Pursuant to Fed. R. Civ. P. 38, Plaintiff requests a trial by jury on all issues so triable.

### Claim for Relief

Plaintiff Thomas R. Gravel respectfully requests the following relief from this Court:

a. An order finding Defendants liable for each count asserted against them;

b. An order awarding Gravel money damages;

c. An order awarding Gravel restitution for unjust enrichment;

d. An order awarding Gravel his unpaid wages under 26 M.R.S. § 626 and 29 U.S.C. § 206;

e. An order awarding Gravel liquidated damages equal to twice the amount of his unpaid wages under 26 M.R.S. § 626-A;

f. An order awarding Gravel interest, costs, and attorneys' fees for his efforts to collect his unpaid wages under 26 M.R.S. § 626 and 29 U.S.C. § 216;

g. An order awarding punitive damages; and

h. An order awarding such other relief as this Court deems just and proper.

DATED: August 9, 2023

/s/ Kyle M. Noonan
Kyle M. Noonan
knoonan@pierceatwood.com
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME  04101
(207) 791-1100

*Attorneys for Plaintiff Thomas R. Gravel*

# **VERIFICATION**

I, Thomas R. Gravel, hereby state and depose as follows:

1. I am the Plaintiff in this case. I reside in Barre, Massachusetts.

2. I am over the age of 18 and competent to make this verification.

3. All factual allegations in this Verified Complaint, other than those stated "upon information and belief," are based on my personal knowledge and are true and correct. If called upon to testify to these matters under oath, I would competently testify as to these matters.

4. I believe the factual allegations in this Verified Complaint made "upon information and belief" to be true.

5. All documents attached as exhibits to this Verified Complaint are true and correct copies of documents in my possession. To the best of my knowledge, the description, origin, and nature of each document attached to this Verified Complaint is correct.

6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 9, 2023.

/s/ Thomas R. Gravel
Thomas R. Gravel