UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| THOMAS R. GRAVEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:23-cv-00315-NT |
| | ) |
| AARON SPENCE, et al., | ) |
| | ) |
| Defendants | ) |

**ORDER ON PLAINTIFF'S MOTION FOR
ATTACHMENT AND ATTACHMENT ON TRUSTEE PROCESS**

Plaintiff, the founder of a business that designed and manufactured snow pushers, alleges Defendants, who were involved in the purchase of Plaintiff's business assets, failed to pay Plaintiff the total purchase price. (Verified Complaint, ECF No. 1.) Plaintiff seeks an attachment and an attachment on trustee process against the property of Defendant Aaron Spence in the amount of $110,000 and the property of Defendant Advanced Development Company LLC (Advanced Development) property in the amount of $2,268.75. (Motion for Attachment, ECF No. 4.) Defendants oppose the motion. (Response, ECF No. 13.)

After review of Plaintiff's motion and supporting documents, the Court grants the motion.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 64 and District of Maine Local Rule 64, the Court applies Maine law when presented with a motion for attachment and attachment on trustee process. To obtain an attachment or an attachment on trustee process,

a plaintiff must demonstrate "that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment." Me. R. Civ. P. 4A(c), 4B(c). A motion for an attachment or an attachment on trustee process must be accompanied by an affidavit or affidavits setting forth "specific facts sufficient to warrant the required findings and shall be upon the affiant's own knowledge, information or belief; and so far as upon information and belief, shall state that the affiant believes this information to be true." Me. R. Civ. P. 4A(i), 4B(c).

Neither Plaintiff nor Defendants filed an affidavit in support of their factual assertions and arguments. Plaintiff, however, relies on his verified complaint as record evidence supporting his request for an attachment. In the verified complaint, Plaintiff asserts that the alleged facts, other than those stated upon information and belief, are based on his personal knowledge and are true; he also asserts that he believes the factual allegations made upon information and belief to be true. A verified complaint is considered the equivalent of an affidavit for purposes of record evidence. *See Sheinkopf v. Stone*, 927 F.1259, 1262 (1st Cir. 1991) (verified complaint treated as "functional equivalent of an affidavit" for summary judgment purposes to the extent it satisfies the standards for evidence presented in a summary judgment motion).

## FACTUAL BACKGROUND

Plaintiff, who resides in Barre, Massachusetts, is the founder and was, at all relevant times, the sole owner of Hydro Cutter, Inc., a business founded in 2001 for the design and manufacture of industrial equipment that cut materials using high-pressure jets of water. (Verified Complaint ¶¶ 2, 11.) Plaintiff designed a snow pusher for use with heavy equipment and in 2018, pursued a patent application for the trip edge component of the snow pusher design with the U.S. Patent and Trademark Office. (*Id.* ¶¶ 12–13.)

Hydro Cutter manufactured snow pushers in a facility in Massachusetts and sold them directly to customers and through certain distributors in New England and New York. (*Id.* ¶ 14; Answer ¶ 14, ECF No. 12.) One of the distributors was Defendant Advanced Development, a business entity with a principal place of business in Hermon, Maine. (Verified Complaint ¶¶ 4, 15; Answer ¶¶ 4, 15.) Defendant Spence (hereinafter "Defendant"), of Dedham, Maine, is the sole member of Defendants Advanced Development and Advanced Manufacturing Company LLC. (Verified Complaint ¶¶ 3, 5; Answer ¶¶ 3, 5.)

On May 7, 2022, after Plaintiff explored the possible sale of Hydro Cutter and its various assets, Plaintiff and Defendant signed an "Equipment Bill of Sale." (Verified Complaint ¶¶ 16, 18; Answer ¶¶ 16, 18; Equipment Bill of Sale, ECF Nos. 1-1, 12-1, 13-1.) Through the Equipment Bill of Sale, Plaintiff agreed to sell and Defendant agreed to purchase thirteen numbered categories of equipment and goods for $80,000. The effective date of the purchase was April 20, 2022, but the bill of sale allowed Plaintiff to continue to use the waterjet machine and other equipment until the inventory was shipped to Hermon,

Maine. Defendant paid $80,000 via check and began coordinating the transfer of the equipment from Massachusetts to Maine. (Verified Complaint ¶ 19; Answer ¶ 19.)

The parties contemplated that Plaintiff would work for Defendant Advanced Development, that Plaintiff's duties would include teaching his manufacturing process to Defendant, and that Plaintiff would be paid $26 per hour. (Verified Complaint ¶¶ 35, 36.) Plaintiff subsequently agreed to be paid $25 per hour. (*Id.* ¶ 40.)

On August 16, 2022, the parties signed and notarized a letter, which purported to constitute a legally binding contract; the agreement acknowledged the equipment bill of sale and the sale/purchase of the snow pusher business, and it specified that "the remaining balance which includes any and all CAD files / cut files for the snow pushers will be turned over to Advanced Manufacturing within five business days." (Intellectual Property Agreement, ECF Nos. 1-2, 12-4, 13-4.) The letter also acknowledged a prior $1,500 deposit for custom springs and provided that "the remaining balance shall also be payable by Advance[d] Manufacturing Co." and that "All patent information will also be due to this company along with the CAD files / cut files." (*Id.*) Defendant agreed to pay Plaintiff $110,000 over a twenty-four-month period in four equal payments of $27,500 every six months. (*Id.*) According to Plaintiff, he mailed Defendant a package containing all patent information and CAD files relating to snow pushers, and Defendant confirmed receipt of the package via text message on August 24, 2022. (Verified Complaint ¶¶ 22–23; Answer ¶ 23.)

Plaintiff began working for Defendant through Defendant Advanced Development in September 2022. (Verified Complaint ¶ 36; Timecards, ECF Nos. 12-5, 13-5; Earnings

4

Statements, ECF Nos. 12-6; 13-6.)  Plaintiff asserts that there were disagreements about the hourly wage, the number of hours worked, and the availability of proper personal protective equipment; Plaintiff terminated his employment in November 2022.  (Verified Complaint ¶ 44; Answer ¶ 44.)

In February 2023, when the first of the payments referenced in the intellectual property agreement were to be made, Defendant did not pay Plaintiff the $27,500 that was due.  (Verified Complaint ¶ 28; Email, ECF No. 1-3.)  Defendant wrote that he would pay Plaintiff after Plaintiff delivered certain equipment listed in the bill of sale that Defendant had not been provided: (1) paint, primer and associated materials, (2) a magnet for a hoist, (3) a garnet removal system, (4) a pallet of painted springs, and (5) three of fifteen stands used for building and painting.  (Email at 1.)  Defendant asserted that all CAD and cut files were to be turned over, but Defendant claimed that "[t]he original auto cad drawings and cut files are still in your possession on your computer."  (*Id.* at 2.)  Defendant also argued that Plaintiff would "need to come up with a monetary discount at this point" for not providing the training and work as promised, including that he was "supposed to work for Advanced Manufacturing Co. for a minimum of 2 years" but instead Plaintiff "started work 5 weeks later then (sic) agreed upon, then took a vacation before only working 29 days and providing myself with a 36 hour notice that you were quitting."  (*Id.*)  Finally, Defendant wrote:

> At this point you will need to sign a Non Compete for a minimum of 5 years that was previously provided to you back in August of 2022, As well as a legal document that states that once you give Advanced Manufacturing the original CAD and cut files that we have the only files pertaining to the snow pusher components and drawings. you will also agree that you are in no way

5

> to recreate or intend to duplicate any of the drawings. As well you will guarantee that no other company or individual has any of these drawings or files. There will be a significant monetary penalty included in this document if you in any way Breach said document.

(*Id.*)

## DISCUSSION

### A.   Intellectual Property Agreement Claim

Plaintiff argues that he performed under the contract embodied in the August 2022 letter by sending the digital files to Defendant, and that Defendant breached that contract because Defendant refused to make the scheduled payment. Defendant contends he: (1) had no duty to pay because Plaintiff materially breached the parties' August 2022 letter agreement before the February 2023 scheduled payment; (2) had no duty to pay or the payment could be reduced because Plaintiff had already breached the terms of the Equipment Bill of Sale; and (3) had no duty to pay because the Equipment Bill of Sale and the August 2022 letter represented parts of a larger oral contract which Plaintiff had breached before February 2023.

#### 1.   Plaintiff's Performance Under the August 2022 Letter

For purposes of the preliminary inquiry on a motion for attachment, the notarized August 2022 letter and Plaintiff's sworn statements are persuasive evidence of Plaintiff's performance under the terms of August 2022 letter agreement. In argument, Defendant maintains that the files were not delivered within five business days as originally agreed, but Defendant evidently does not deny that a few days later he received the package Plaintiff sent. Defendant, however, did not file an affidavit contesting Plaintiff's sworn

6

statements of fact.  Furthermore, Defendant does not effectively explain how such a short delay in providing the files would constitute a material breach of the parties' agreement.  To the extent Defendant contends that he had to request the files through October 2022 (see Response at 4), Defendant does not identify which files were allegedly still missing after October 2022 or explain their importance.

Even accepting Defendant's unverified assertions, the most likely inference to be drawn from the parties' submissions is that the relevant files were eventually delivered given that Defendant began manufacturing and offering the same snow pushers for sale, and that Plaintiff was still working for Defendant for several weeks or months after Defendant's alleged requests for the missing digital files. (See Motion at 3-4, citing https://www.subzerosnowpushers.com (advertising Subzero Snow Pushers as "formerly Hydro-Cutter, is now operating out of Maine with a new owner but still offering the same trustworthy durability").

Defendant also appears to argue that Plaintiff breached the agreement by retaining the original copies of the digital files.  The Court, however, did not locate and Defendant did not identify within the August 2022 letter a requirement that Plaintiff destroy all his own copies of the files or other related records.[1]

---

[1] Defendant evidently intended for the transaction to include more provisions based on exclusivity. Defendant filed a noncompete contract that was apparently drafted and first sent to Plaintiff in August 2022. (Draft Noncompete Agreement, ECF Nos. 12-3, 13-3.)  Because the document is unsigned and there is no record evidence that the parties agreed to a non-competition agreement, the most likely inference for the Court to draw is that there was no meeting of the minds on the terms of the draft document.

At this time and on this record, Plaintiff has demonstrated that he is more likely than not to prevail on his claim despite Defendant's contentions that Plaintiff breached the parties' August 2022 letter agreement.

**2.      Plaintiff's Performance Under the Equipment Bill of Sale**

Defendant described several categories of goods and equipment that were included in the Equipment Bill of Sale which Plaintiff allegedly failed to deliver.  Plaintiff maintains that he made all required items available when Defendant picked up the goods and equipment in August 2022.  According to Plaintiff, Defendant never communicated before February 2023 that any items were missing.  In argument, Defendant denies Plaintiff's contention but did not include any records of the alleged communications or identify their dates or contents, even though Defendant did so for other alleged communications between the parties. (*See, e.g.*, Response at 2–3 (describing requests Plaintiff made for documentation such as the employment letter on May 2, May 7, May 11, May 13, May 16, and June 3).)  On the current record, the Court is persuaded that Plaintiff is more likely than not to prevail on his claim and that he did not breach the equipment contract.

Furthermore, even if Plaintiff failed to deliver some of the goods or equipment, Defendant has not explained how such a failure would constitute a material breach of the Equipment Bill of Sale to justify nonperformance rather than provide support for a claim for damages or setoff.[2]  Defendant has also not shown that one party's material breach of

---

[2] *See generally, Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 467 (1960) ("In a two-party contract situation, when a promisor's duty to perform is absolute, the promisee's breaches will not excuse performance of that duty; the promisor has an independent claim against the promisee in damages.  Formerly the promisor was required to bring a separate action to recover his damages.  Under modern practice, when the promises are to pay money, or are reducible to a money amount, the promisor, when sued by the promisee, offsets the

one contract excuses the other party's duty to perform under a subsequent separate contract. *See DiPietro v. Boynton*, 628 A.2d 1019, 1022–23 (Me. 1993) (discussing independent effects of separate contracts as contrasted with the principle whereby terms in multiple contracts are generally interpreted similarly when signed by the same parties at the same time); *Fam. Living, Inc. v. Baldyga*, No. 00-369-P-H, 2001 WL 1335867, at *3 (D. Me. Oct. 31, 2001) (noting that separateness of multiple contracts is bolstered when the parties are not identical, including when a party to one contract is a corporate entity solely-owned by one of the parties to both contracts).

Because a finding of material breach of the Equipment Bill of Sale is not supported by this record, and because a breach of a separate agreement would be of limited relevance even if it were supported, under Maine law, Defendant's counterclaim based on the Equipment Bill of Sale contract for the value of any allegedly missing equipment would not alter the amount of the attachment to which Plaintiff would be entitled for the failure to pay as required under the August 2022 intellectual property agreement. *See Siefken v. Group Home Found. Inc.*, No. 1:15-cv-00209-GZS, 2015 WL 5178067, at *2 n.7 (D. Me. Sept. 4, 2015) ("Defendant's filing of a counterclaim, however, would not affect Plaintiff's entitlement to an attachment as an offset based on a counterclaim is not appropriate") (citing *Casco N. Bank, N.A. v. New England Sales, Inc.*, 573 A.2d 795, 797 (Me. 1990)).

---

damages which he has sustained against the amount he owes, and usually obtains a judgment for any excess").

### 3. Oral Contract

Defendant claims the parties orally agreed in March 2022 that Defendant would buy the Hydro Cutter assets. (Response at 2.) Based on this argument, the Equipment Bill of Sale and the August 2022 letter agreement would represent the parties' attempts to reduce certain terms of the larger agreement to writing, but the two documents would not constitute the parties' entire agreement.

As Plaintiff argues, even if such an agreement were reached, the enforceability of such an agreement would be questionable under the statute of frauds because the agreement would not have been fully performed within one year and it would have arguably involved a promise to refrain from carrying on a business or trade for a certain term.[3] Defendant would also have to confront other proof challenges. For instance, because the existence of a prior and broader oral agreement in March 2022 is contrary to the express terms of the first written agreement, which in May 2022 provided that it "constitutes the only agreement between the Buyer and Seller, and all other agreements, whether express or implied, shall have no force and effect except as stated in this agreement," the parol evidence rule might compromise Defendant's ability to prevail on his argument. (Equipment Bill of Sale at 3.)[4]

---

[3] Maine's statute of frauds, 33 M.R.S. § 51, provides that for certain types of contracts or promises, "no action shall be maintained . . . unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith . . . ." Subsection 5 covers "any agreement that is not to be performed within one year from the making thereof," and subsection 7 covers "any agreement to refrain from carrying on or engaging in any trade, business, occupation or profession for any term of years or within any defined territory or both . . . ."

[4] "The parol evidence rule operates to exclude from judicial consideration extrinsic evidence offered to vary, add to, or contradict the terms of an integrated written agreement." *Brown Dev. Corp. v. Hemond*, 2008 ME 146, ¶ 13, 956 A.2d 104, 108 (internal quotation marks omitted).

In sum, on this record, Plaintiff is more likely than not to prevail on his claim that Defendant materially breached an enforceable contract and that Plaintiff is likely to recover at least $110,000 in damages.

**B.     Wage Claim**

Plaintiff claims Defendant underpaid him by approximately ten hours for each of the last three pay periods in October and November 2022. According to Plaintiff, therefore, he was not paid for 30.25 hours in the last three pay periods, at a rate of $25.00 per hour, for a subtotal of $756.25, which allows him to recover total damages (after including statutory damages) of $2,268.75. According to Defendant, Plaintiff completed his timecards improperly in the prior pay periods in September and October 2022 by including on a single timecard the hours from more than the seven days of a single calendar week. Defendant contends that as a result, Plaintiff's first paychecks included overpayments, and the subsequent three underpayments were an attempt to correct the prior error. Defendant maintains that a review of all the timecards and earnings statements—and not merely the subset that Plaintiff selected—will show that Plaintiff claimed to have worked 331.75 hours and was paid for essentially all that time, 331.25 hours.

Defendant's arguments, however, are not supported by record evidence. Plaintiff has presented evidence through a verified complaint and the exhibits referenced in the complaint to support his claim. There is no sworn testimony that contradicts the assertions in the verified complaint and its exhibits. Based on the verified complaint and the referenced letter from a Maine Department of Labor representative confirming the

11

underpayment, the Court is persuaded that Plaintiff is more likely than not to prevail on the wage claim.

## CONCLUSION

Based on the foregoing analysis, the Court grants Plaintiff's Motion for Attachment and Attachment on Trustee Process. The Court orders Plaintiff shall have an attachment and an attachment on trustee process (a) on Defendant Spence's property in the amount of $110,000 and (b) on Defendant Advanced Development's property in the amount of $2,268.75.[5]

## **NOTICE**

Any objections to this Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 3rd day of January, 2024.

---

[5] In their response to the motion for attachment, Defendants assert that Plaintiff was employed by Defendant Advanced Manufacturing Company LLC. Defendants include in their submission, a letter on Defendant Advanced Manufacturing's letterhead purporting to confirm an employment agreement between Plaintiff and Defendant Advanced Manufacturing pursuant to which agreement Plaintiff would be paid $52,000 annually. The more reliable evidence, however, supports the conclusion that Plaintiff worked for Defendant Advanced Development. First, Plaintiff's sworn statements in the verified complaint identify Plaintiff's employer as Defendant Advanced Development. (Verified Complaint ¶¶ 35, 36.) In addition, the wage statements filed by Defendants identify the employer as Defendant Advanced Development. (Exhibit F, ECF No. 13-6.)